**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**CAROL A. MCPHERSON,**

      **Plaintiff,**

**v.**                      **Case No.: 3:10-cv-01075**

**MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,**

      **Defendant.**

**MEMORANDUM OPINION**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Claimant's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently before the Court on the parties' cross motions for judgment on the pleadings as articulated in their briefs. (Docket Nos. 17 and 18). Both parties have consented in writing to a decision by the United States Magistrate Judge. (Docket Nos. 9 and 10).

The Court has fully considered the evidence and the arguments of counsel. For the reasons set forth below, the Court finds that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

**I.**    **Procedural History**

Plaintiff, Carol A. McPherson  (hereinafter "Claimant"), filed applications for DIB and SSI on May 22, 2006, alleging that she became disabled on

1

November 27, 2002 due to "back injuries, osteoarthritis in back, and missing half of left hand." (Tr. at 174-178, 179-182, and 187).[1] The Social Security Administration (hereinafter "SSA") denied the claims initially and upon reconsideration. (Tr. at 58-62, 63-67, 80-82, and 83-85). Thereafter, Claimant requested an administrative hearing, which was conducted on August 5, 2008 by the Honorable Michelle Cavadi, Administrative Law Judge (hereinafter "ALJ"). (Tr. at 24-53). By decision dated June 4, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 8-23).  The ALJ's decision became the final decision of the Commissioner on August 17, 2009 when the Appeals Council denied Claimant's request for review. (Tr. at 1-3).  Claimant filed the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. §405(g).   (Docket No. 2). The Commissioner filed an Answer and a Transcript of the Administrative Proceedings, and both parties filed their Briefs in Support of Judgment on the Pleadings. (Docket Nos. 12, 13, 17, and 18). Consequently, the matter is ripe for resolution.

## II.   **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).

---

[1] Claimant previously filed a SSDI application which was denied at the initial level on 2/16/1993 and previous DIB and SSDI applications which were denied at the initial level on 1/10/2006. (Tr. at 196).

The Social Security Regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§ 404.1520, 416.920. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to prove, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker,*

715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review." 20 C.F.R. § 404.1520a. First, the SSA evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. If such impairment exists, the SSA documents its findings. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the SSA compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. 20 C.F.R. §

404.1520a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual function. 20 C.F.R. § 404.1520a(d)(3).

In this particular case, the ALJ determined as a preliminary matter that Claimant met the insured status requirements of the Social Security Act through December 31, 2007. (Tr. at 13, Finding No. 1). At the first step of the sequential evaluation, the ALJ found that Claimant had not engaged in substantial gainful activity since November 27, 2002. Turning to the second step of the evaluation, the ALJ determined that Claimant had the severe impairments of degenerative disc disease of the lumbar spine and cervical spine and chronic obstructive pulmonary disease ("COPD"). (Tr. at 13, Finding No. 3). However, under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter the "Listing"). (Tr. at 14, Finding No. 4). The ALJ assessed Claimant's residual functional capacity (hereinafter "RFC") as the following:

> [M]edium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with only occasional stooping, c[r]ouching, crawling, and kneeling; avoiding concentrated exposure to extreme cold or heat or hazards; no concentrated exposure to cold, heat, or hazards; and no repetitive use of right foot pedals.

(Tr. at 15, Finding No. 5).

As a result, the ALJ found that Claimant could not return to her past relevant employment as a certified nurse assistant. (Tr. at 17, Finding No. 6). The ALJ considered that (1) Claimant was 49 years old on the established disability onset date, defined as an individual closely approaching advanced age, and that

she subsequently entered the category of advanced age; and that (2) she had at least a high school education and could communicate in English; therefore, (3) transferability of job skills was not material to the disability determination.[2] (Tr. at 17, Finding Nos. 7, 8, and 9). Based on the testimony of the vocational expert, the ALJ found that Claimant could make a successful adjustment to other work that exists in significant numbers in the national economy, such as hand packager and machine tender. (Tr. at 17, Finding No. 10). Therefore, the ALJ concluded that Claimant was not disabled and, thus, was not entitled to benefits. (Tr. at 18).

## III.   <u>Scope of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence.  In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972), quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). This Court is not charged with conducting a *de novo* review of the evidence.  Instead, the Court's function is to scrutinize the totality of the record and determine whether substantial evidence exists to support the conclusion of the Commissioner. *Hays v. Sullivan,* 907 F.2d

---

[2] The Medical-Vocational Rules supported a finding that Claimant was not disabled regardless of whether she had transferable job skills.

1453, 1456 (4th Cir. 1990).  The decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650,653 (4th Cir. 2005), citing *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 2001).  If substantial evidence exists, then the Court must affirm the decision of the Commissioner "even should the court disagree with such decision."  *Blalock v. Richardson, supra* at 775*.*

A careful review of the record reveals that the decision of the Commissioner is based upon an accurate application of the law and is supported by substantial evidence.

**IV.**   **Claimant's Background**

Claimant was 55 years old at the time of her administrative hearing. (Tr. at 30). She obtained a GED and certified nursing assistant ("CNA") certificate.  (Tr. 31). In the fifteen years prior to Claimant's alleged onset of disability, she worked as a certified nursing assistant for six years and a cook for approximately one year. (Tr. 32-33).

**V.**   **Relevant Evidence**

The Court has reviewed the Transcript of Proceedings in its entirety, including the medical records in evidence, and summarizes below Claimant's medical treatment and evaluations to the extent that they are relevant to the issues in dispute. As a preface to the discussion, the Court notes that several of the medical records included in the Transcript of Proceedings predate Claimant's alleged onset of disability and, thus, do not bear on whether she was disabled during the relevant time period; however, the Court includes these records to

elucidate Claimant's medical background.

### A.   Pre-Onset Records

In 1992, Claimant suffered a gunshot wound to her left hand and right shoulder for which she underwent surgery. (*See* Tr. at 530). Claimant reported numbness and tingling in her left hand since the incident. (*Id.*).

On September 30, 1999, while working as a CNA, Claimant reportedly felt immediate burning back pain when attempting to lift a 300+ pound patient from the bed to the chair. (Tr. at 376). She went to the emergency room at Cabell Huntington Hospital and followed up with Jerry Day, M.D. Dr. Day placed Claimant on light duty and diagnosed her with a lumbar sprain which was resolving. (*Id.*).

In March 2000, Claimant exacerbated her lumbar sprain when doing "some lifting" and Dr. Day placed her on temporary work release. (Tr. at 370 and 663). On January 10, 2001, Claimant felt that she was slowly making progress with work simulation activities. (Tr. at 397). She was taking 5 mg of Lortab two to three times per day. (*Id.*). She complained of some neck and back pain, but Dr. Day noted that Claimant did not have much radiating extreme pain on examination and there was no clinical evidence of radiating pain from her cervical range of motion and straight leg testing. (*Id.*).

On June 20, 2001, Claimant reportedly suffered another work-related injury, this time to her left shoulder, which occurred when she trying to support a patient who collapsed and pulled down on Claimant's arm as she fell. (Tr. at 340 and 367). She was evaluated at Cabell Huntington Hospital where cervical and lumbar x-rays revealed some spondylitic change most prominent with disc space

narrowing at L/5 S/1, but no spondylolisthesis was noted. (*See* Tr. at 368). On August 7, 2001, she followed up with Dr. Day; she reported neck pain and stiffness, pain in the right lumbar paraspinous region, and some radiating pain to her left arm since her June 2001 injury. (Tr. at 367). She had full cervical mobility; negative Spurling's maneuver; some tenderness in the cervical musculature, mainly on the left side; some neck soreness, but good shoulder mobility; normal strength and reflexes; good dexterity; minimal low back pain except for some sprain type pain in her right lumbar paraspinous region with good leg function; negative Romberg's; and could perform tandem gait and stand on one leg. (*Id.*).

Claimant began physical therapy and reported that it was helping alleviate her neck pain, although she began to frequently miss her appointments. (*See, e.g.,* Tr. At 449 and 415). Claimant returned to work on May 2, 2002, but complained that her back pain increased. (Tr. at 413). Claimant began to see David L. Weinsweig, M.D., in 2002, when Dr. Day left the area. Studies of her cervical and lumbar spine taken at that time showed degenerative disc disease particularly at L/5 S/1 and mild bulging discs throughout the lumbar and cervical spines. Dr. Weinsweig did not suggest surgery, but instructed Claimant to continue her physical therapy and limit her work hours to 32 per week for another month. Thereafter, she could return to a full 40 hours. (Tr. at 391).

In the month prior to the alleged onset of disability, Claimant complained of constant low back and right leg pain which varied in intensity from 9/10 to 10/10. (Tr. at 360). On November 15, 2002, Claimant was first seen by Ahmet Ozturk, M.D., at the Cabell Regional Pain Management Center who assessed that

she had L3, L4 lumbar radiculopathy; SI joint syndrome, right; right lumbar facet syndrome; and myofascial pain syndrome. (Tr. at 358).

### B.  Prescribed Period Records

On December 6, 2002, Dr. Weinsweig noted that there was nothing he could do for Claimant from a neurosurgical standpoint and it would be best if Dr. Ozturk take over her care. (Tr. at 390). Claimant continued to complain of back and leg pain and began to complain of leg weakness and numbness which reportedly began in the middle to end of November 2002; she also asked Dr. Ozturk to take her off of work. (Tr. at 501 and 353).

On March 19, 2003, Claimant reported low back pain, pain down her right lower extremity to her knee, numbness, and dull throbbing back pain that increased when standing. (Tr. at 342). On August 21, 2003, Dr. Ozturk gave Claimant a selective nerve root blocker of her lumbar spine. (Tr. at 362). She failed to appear for her follow-up appointment and reportedly missed three scheduled selective nerve root blocks. (Tr. at 341).

On December 19, 2005, Claimant was seen at Cabell Huntington Hospital, reporting that she fell while taking the garbage out twelve days prior and her feet now felt like they were on fire. (Tr. at 667). She also complained of back pain and numbness in her right leg and noted that the pain began two days prior. (Tr. at 670). She was diagnosed with lumbar strain and athlete's foot. (Tr. at 668).

### C.  State Agency Assessments

On September 15, 2005, Claimant was examined by Bruce A. Guberman, M.D., at Tri-State Occupational Medicine in reference to her worker's compensation claim. (Tr. at 529-540). Dr. Guberman's impression was that

Claimant suffered from acute and chronic lumbosacral strain, post-traumatic. (Tr. at 533). Her symptoms persisted despite conservative treatment. (*Id.*). On examination, she had range of motion abnormalities of the lumbar spine; her gait was normal; there was a decrease in the Achilles and patellar tendon reflexes suggestive, but not diagnostic of lumbar radiculopathy; there were no confirmatory motor or sensory abnormalities in the lower extremities; and there was no evidence of upper motor neuron lesion. (*Id.*). Dr. Guberman believed that Claimant reached maximum medical improvement regarding her June 20, 2001 injury and no further treatment or testing was likely to improve her impairment. (*Id.*). He recommended that Claimant receive an 8 percent impairment of the whole person under worker's compensation criteria. (Tr. at 534).

On August 4, 2006, Claimant was examined by Drew C. Apgar, D.O. at the request of the SSA. (Tr. at  572-588). Based on his objective findings, Dr. Apgar concluded that Claimant would have no difficulty with sitting, handling objects with her dominant hand, hearing, and speaking, but there may be marked difficulty with standing, walking, lifting, carrying, pushing, pulling, and traveling. (Tr. at 583). Claimant's effort was considered satisfactory and results of testing were viewed as reliable. (*Id.*).

On August 28, 2006, Porfirio Pascasio, M.D., completed a physical RFC assessment, concluding the following:

-   Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit with normal breaks for about 6 hours in an 8-hour workday; and push and/or pull an unlimited amount, other than as shown for lift and/or carry.

-   Claimant could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; balance; stoop; kneel; crouch; and crawl.

- Claimant had no manipulative, visual, or communicative limitations.

- Claimant should avoid concentrated exposure to extreme cold, extreme heat, and hazards, but had no limitations regarding wetness, humidity, noise, vibration, and fumes/odors/gases.

(Tr. at 589-596). Dr. Pascasio noted that a few of Claimant's allegations were not supported by the medical evidence and she was, therefore, only partially credible. (Tr. at 594).

On August 30, 2006, Joseph A. Shaver, Ph.D., completed a Psychiatric Review Technique, finding that Claimant had non-severe depression that rendered her only mildly limited on a scale of "none," "mild," "moderate," "marked," "extreme," and "insufficient evidence" in each of the three areas listed: (1) restriction of activities of daily living; (2) difficulties in maintaining social functioning; and (3) difficulties in maintaining concentration, persistence or pace; she had no episodes of decompensation of extended duration. (Tr. at 597-610). He found that Claimant was generally credible regarding her reported mental functioning. (Tr. at 609). He believed that Claimant possessed the mental capacity to maintain gainful employment on a sustained basis. (*Id.*).

On November 16, 2006, Amy Wirts, M.D., reviewed the medical evidence in the file. (Tr. at 611). Dr. Wirts affirmed Dr. Pascasio's August 28, 2006 physical RFC assessment with the exception of concluding that Claimant had mild limitations in gross and fine manipulation and decreased feeling in her left hand status post gun shot wound. (*Id.*). The following day, Holly Cloonan, Ph.D., reviewed the evidence and affirmed Dr. Shaver's August 30, 2006 psychiatric review technique. (Tr. at 612).

12

On September 23, 2008, Kip Beard, M.D., examined Claimant. (Tr. at 672-684).   He found that Claimant had no range of motion limitations of her cervical spine and no spinous process or muscular tenderness; normal range of motion of her shoulders; a well-healed 8 cm scar on her left hand with no deformity or atrophy of significance, she could pick up a coin without difficulty, and had normal range of motion in her fingers; some complaints of mild pain in her lumbosacral spine/hips on forward bending with tenderness, but no spasm with flexion at 75 degrees, with normal range of motion otherwise, and she could stand on one leg; she had some reported sensation loss in her lateral right thigh and diminished grip strength in her left hand. (Tr. at 675-676). Dr. Beard's impression was the following:

1. Chronic lumbosacral strain with right radicular symptoms.

2. Reported lumbar spondylosis.

3. Lumbar degenerative disc disease according to the records.

4. Left hand gunshot wound injury, status post apparent debridement and closure.

(Tr. at 676). In summary, Claimant's back examination revealed mild pain and tenderness with some mild motion loss; her straight leg raising did not produce radicular complaints; she reported diminished sensation of her lateral right thigh, but there was no weakness or atrophy, and reflexes appeared symmetric; there was no obvious radiculopathy; and her allegation that she was "missing half of the left hand" was probably an overstatement as examination revealed a 8 cm scar with possible mild tissue loss in the region of the scar, but no obvious atrophy, manipulation was preserved, diminished grip strength as compared to

the right, and mild motion loss. (Tr. at 676-677). Dr. Beard opined that Claimant could:

- Lift/carry up to 10 pounds continuously, 11 to 20 pounds frequently, 21-50 pounds occasionally, and never lift/carry 51-100 pounds.

- Sit for 6 hours and stand or walk for 4 hours in an 8-hour workday, with breaks at 3 hours of sitting and 2 hours of standing or walking.

- Occasionally reach with either hand and push/pull, frequently handle or finger items with her left hand and continuously do so with her right hand, and continuously feel with either hand.

- Occasionally climb ladders, or scaffolds, stoop, kneel, crouch, and crawl; frequently climb stairs and ramps; and continuously balance.

- Occasionally tolerate unprotected heights, operating a motor vehicle, humidity and wetness, extreme cold, extreme heat, and vibrations; and frequently tolerate moving mechanical parts and dust, odors, and irritants.

- Perform activities like shopping, travel without assistance, ambulate without assistance, walk a block at a reasonable pace on uneven surfaces, use public transportation, climb a few steps at a reasonable pace using a single hand rail, prepare a simple meal and feed herself, care for personal hygiene, and sort and handle papers/files.

(Tr. at 678-683). Dr. Beard noted that in making his findings regarding reaching, pushing, and pulling, he considered not only Claimant's hand impairments, but her back impairments as well. (Tr. at 680; *See also* Tr. at 687-688).

## VI.   __Claimant's Challenges to the Commissioner's Decision__

Claimant contends that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) disregarded the effects of Claimant's degenerative disc disease, numbness in her hands, depression, and chronic pain; (2) failed to perform any credibility determination; (3) failed to consider Claimant's impairments in combination; (4) failed to accurately develop the

evidence; and (5) failed to produce evidence sufficient to rebut the presumption of disability. (Pl.'s Br. at 7-12). In response, the Commissioner argues that all of Claimant's evaluating physicians agreed that Claimant did not have major functional impairments, that her activities of daily living demonstrated that she is not disabled, and that substantial evidence supports the ALJ's decision that Claimant was not disabled. (Def. Br. at 3-10).

## VII. <u>Analysis</u>

Having thoroughly considered the evidence and the arguments of counsel, the Court rejects Claimant's contentions as lacking merit for the reasons that follow. The Court finds that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

### A. <u>Effects of Claimant's Impairments and Pain</u>

Claimant first argues that the ALJ disregarded the effects of the numbness in her hands, depression, degenerative disc disease of her cervical and lumbar spine, and pain. (Pl.'s Br. at 7-8). Claimant further contends that the ALJ failed to perform any credibility determination. (Pl.'s Br. at 8-10). The Court finds these arguments unpersuasive. The ALJ clearly considered the effects of Claimant's impairments in rendering her decision in accordance with the applicable Social Security regulations, rulings, and case law. The ALJ's decision documents her analysis of the effects of Claimant's left hand impairment, depression, and degenerative disc disease. In addition, the ALJ properly performed and documented her two-step assessment of Claimant's subjective complaints of pain and other symptoms and made a determination as to her credibility. The ALJ's findings are consistent with the medical evidence of record and are supported by

15

substantial evidence.

At the second step of her analysis, the ALJ concluded that Claimant's left hand impairment and depression did not cause more than a minimal limitation on her ability to do work-related activities and were, therefore, not considered severe impairments. (Tr. at 13). The ALJ noted that the medical evidence documented that Claimant had no obvious deformity or atrophy of her left hand and her manipulation was preserved; in addition, a consultative examination revealed that her fine coordination, pinch, and manipulation were intact bilaterally. (Tr. at 14). Regarding Claimant's depression, the ALJ properly applied the "special technique" as required. 20 C.F.R. § 404.1520a. Upon finding that Claimant had a medically determinable mental impairment, the ALJ rated the degree of functional limitation resulting from the impairment according to the criteria specified in 20 C.F.R. § 404.1520a(c), finding that Claimant was only mildly limited in the functional categories of activities of daily living, social functioning, and concentration, persistence, or pace; concluding that Claimant's depression was not severe. (*Id.*).

The foregoing findings regarding Claimant's left hand impairment and depression accurately reflect the medical evidence. Claimant's left hand is mentioned minimally throughout the record and several physicians opined that the residual effects from her gunshot wound posed no more than a mild impairment on her ability to do work activities. Claimant reported numbness and tingling in her left hand. (Tr. at 530). Dr. Apgar concluded that she may have marked difficulty with carrying, pushing, and pulling. (Tr. at 583). However, Dr. Pascasio determined that Claimant had no manipulative limitations. Similarly,

Dr. Wirts concluded that she had only mild limitations in gross and fine manipulation and sensation, and Dr. Beard found that she probably overstated her injury, claiming that she was "missing half of the left hand" when she, in fact, had all of her fingers on her left hand, had no deformity or atrophy of significance, could pick up a coin without difficulty, and had normal range of motion in her fingers. (Tr. at 592, 611, and 675-676). Although Claimant had possible mild tissue loss in the area of her 8 cm well-healed scar, diminished grip strength, and mild motion loss, Dr. Beard was confident that Claimant could occasionally reach, push, or pull; frequently handle or finger items; and continuously feel items with her left hand.  In reaching these conclusions, Dr. Beard also considered Claimant's back impairments and their impact on her ability to push or pull. (Tr. at 676-677 and 680).

Similarly, there are very few references to Claimant's depression in the record and no indication that it severely impaired her ability to work. Drs. Shaver and Cloonan found Claimant only mildly limited in activities of daily living, social functioning, and concentration, persistence, or pace, noting that Claimant had no episodes of decompensation of extended duration. (Tr. At 607 and 612). In addition, although Claimant reported that depression and back pain limited her daily activities, she managed to cook for her mother; care for her all of her personal hygiene and grooming; prepare meals daily; perform housework weekly; go outside daily; go grocery shopping for two hours twice per month with a companion; manage her finances; watch television; talk with her grandchildren; and read to them for two hours at a time. (Tr. at 217-220).

17

Further, in assessing Claimant's RFC, the ALJ considered Claimant's pain and symptoms in accordance with the two-step process provided in 20 C.F.R. §§ 404.1529 and 416.929 and clarified in Social Security Ruling 96-7p. The ALJ considered Claimant complaints that she was not supposed to lift or carry anything over five pounds, was unable to carry anything in her left hand, and was constantly in pain because of arthritis in her back. (Tr. at 15). Concluding that Claimant's medically determinable conditions could reasonably be expected to produce her symptoms and pain, the ALJ evaluated the intensity, persistence, and severity of Claimant's symptoms to determine the extent to which they prevented her from performing basic work activities. (Tr. at 15-16). When the intensity, persistence or severity of the symptoms could not be established by objective medical evidence, the ALJ assessed the credibility of Claimant's statements to support the alleged disabling effects. (*Id.*).

In assessing Claimant's credibility, the ALJ thoroughly evaluated the effects of Claimant's back impairment, documenting her analysis and the evidence she considered. (Tr. at 15-16). The ALJ noted, *inter alia*, that Claimant had normal neurological examinations; could perform a seated straight leg raise on three separate tests; could walk on her heels and toes and tandem walk without difficulty; could get on and off an examination table without difficulty; could undress without assistance; and had only mild pain with tenderness in her back. (Tr. at 16). Furthermore, Claimant was consistently found to have a normal gait without any need for an assistive device; maintained good range of motion in her back; had no evidence of radiculopathy; and maintained normal sensation and motor testing in her lower extremities. The ALJ ultimately concluded that

Claimant was not credible in her allegations of disabling impairments.

The ALJ's conclusion that Claimant's statements regarding disabling symptoms and pain were not credible is supported by substantial evidence. When evaluating whether an ALJ's credibility determinations are supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessments for those of the ALJ; rather, the Court must review the evidence to determine if it is sufficient to support the ALJ's conclusions. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence . . . or substitute its own judgment for that of the Commissioner." *See Hays v. Sullivan,* 907 F.2d. 1453, 1456 (4th Cir. 1990). Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-990 (4th Cir. 1984), citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976).

Here, the Court finds that the ALJ's credibility assessment of Claimant was consistent with the applicable regulation, case law, and Social Security Rulings and was supported by substantial evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-7p; *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). Significant evidence existed in the record that Claimant's complaints of disabling back pain and other symptoms did not correlate with the objective medical evidence. Following Claimant's reported work injuries, Claimant was diagnosed with a lumbar strain and treated conservatively with medication and physical therapy; she never received surgical intervention, nor was it recommended. She was given a selective nerve root blocker of her lumbar spine, but failed to appear for her

follow-up appointment and missed three scheduled selective nerve root blocks. (Tr. at 342, 362, and 341). She had no range of motion limitations of her cervical spine and was only mildly limited in her lumbar spine with flexion at 75 degrees and an otherwise normal range of motion. (Tr. at 675-676). She could stand on one leg and raise her leg to 90 degrees from a seated position with no complaints. (Tr. at 676 and 533). She could heel walk, toe walk, tandem walk, and squat. (*Id.*). On examination regarding reported weakness and numbness in her right leg, there was a decrease in the Achilles and patellar tendon reflexes, but there were no confirmatory motor or sensory abnormalities in her lower extremities and no evidence of upper motor neuron lesion. (Tr. at 533). In addition, although Dr. Apgar found Claimant's effort to be satisfactory on examination, Dr. Pascasio noted that her allegations were not supported by the medical evidence and she was only partially credible, and Dr. Beard determined that she probably overstated her left hand impairment. (Tr. at 538, 594, and 676).

Therefore, based on all of the above, the Court finds that the ALJ fully considered the effects of Claimant's impairments and properly evaluated her reported symptoms and pain in making a credibility determination.

### B.   **Impairments in Combination**

Claimant next argues that the ALJ failed to consider Claimant's impairments in combination, including the numbness in her hands, cervical and lumbar spine degenerative disc disease, and depression. (Pl.'s Br. at 10). Undoubtedly, the ALJ was required to consider the combined, synergistic effect of all of Claimant's medically determinable impairments, severe and non-severe, to accurately evaluate the extent of their resulting limitations on Claimant.

*Walker v. Bowen,* 889 F.2d 47 (4th Cir. 1989).  The social security regulations provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 404.1523.  Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity."  *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974).  The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.  *Id.*  The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). As the Fourth Circuit Court of Appeals stated in *Walker,* "[i]t is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity."  *Walker v. Bowen, supra* at 50.

Here, the ALJ fulfilled her obligation to evaluate Claimant's impairments, separately and in combination. As noted in the preceding section, the ALJ explicitly considered Claimant complaints of numbness in her left hand, depression, back pain, and weakness and numbness in her right leg. However, to the extent that the ALJ did not elaborate on her analysis of Claimant's

impairments in combination, the Court finds this to be harmless error.

Courts have applied a harmless-error analysis in the context of Social Security appeals. One illustrative case provides:

> Moreover, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir.1988). The procedural improprieties alleged by Morris will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.

*Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Our Court of Appeals, in a number of unpublished decisions, has taken the same approach. *See, e.g., Bishop v. Barnhart*, No. 03-1657, 2003 WL 22383983, at *1 (4th Cir. Oct 20, 2003); *Camp v. Massanari*, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec 27, 2001); *Spencer v. Chater*, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996).

In this case, the ALJ clearly considered Claimant's impairments in combination, although she did not fully articulate this analysis in her decision. During the administrative hearing, the ALJ posed several hypothetical questions which included different combinations of Claimant's impairments. The ALJ asked the vocational expert if a hypothetical individual of Claimant's age, education level, past relevant work, RFC, and who could not use her left hand for frequent gross and fine manipulation could perform jobs that existed in significant numbers in the national and regional economy. (Tr. at 50-51). The

vocational expert responded that the person could perform the sedentary position of surveillance system monitor. (Tr. at 51). The ALJ then questioned if the hypothetical individual could work if she had the above qualities, without the left hand limitation, and the added restriction of only occasional contact with the public; the vocational expert responded that she could work as a surveillance system monitor, product inspector, house sitter, non-clerical office helper, hand packager, and machine tender. (Tr. at 51-52; *See* Tr. at 50-51). Finally, the ALJ asked if the hypothetical individual could work if the ALJ added the restriction of no frequent use of her left hand for fingering or feeling; the ALJ replied that the surveillance system monitor position would remain. (Tr. at 52).

In addition, as discussed, the record substantiates that the numbness in Claimant's left hand and her depression posed no more than a minimal limitation on her ability to perform work activities. As to her left hand, her manipulation was preserved; there was no obvious atrophy or deformity; her fine coordination and pinch were intact bilaterally; she could pick up a coin without difficulty; and she had normal range of motion in her fingers. Similarly, there was no objective evidence that her alleged depression posed more than a minimal restriction on her ability to work and was found to only mildly limit her in performing activities of daily living, social functioning, and concentration, persistence, or pace. Therefore, although the ALJ did not specifically discuss the interplay between these impairments and Claimant's degenerative disc disease, the Court finds that it was harmless error as the functional effects of Claimant's left hand numbness and depression were *de minimis*. The weight of the medical evidence relates to Claimant's degenerative disc disease of her lumbar and cervical spine. As such,

23

the ALJ's discussion was reasonably dedicated, in a substantial part, to the functional limitations and symptoms associated with Claimant's degenerative disc disease of her lumbar and cervical spine.

Therefore, the Court finds that the ALJ's failure to explicitly state her consideration of Claimant's impairments in combination was harmless error and does not warrant remand as it is clear from the administrative record that she considered the synergistic effects of Claimant's symptoms.

### C.   Develop the Record

Claimant next argues that the ALJ failed to develop the record regarding Claimant's pain, numbness, depression, and their accompanying restrictions. (Pl.'s Br. at 10-11). In *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986), the Fourth Circuit Court of Appeals noted that an ALJ has a "responsibility to help develop the evidence." *Cook v. Heckler*, *supra* at 1173 (4th Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." *Id.* In *Cook,* the ALJ made a determination that the claimant's arthritis did not meet or equal a listed impairment presumably without having any evidence in the record that was pertinent to the criteria of the listed impairment. *Id.* The Court identified some of the medical findings that should have been considered in determining whether or not the claimant met the listed impairment, adding "[w]ithout any of the tests and physician's opinions described above, it is impossible to tell whether Cook meets the requirements in the list of impairments. It must have been impossible for the ALJ to tell whether

24

she did or did not.  Thus, his failure to ask further questions and to demand the production of further evidence, as permitted by 20 C.F.R. § 404.944, amounted to neglect of his duty to develop the evidence."

The errors of the ALJ in *Cook v. Heckler,* however, were not mirrored in the present case. While the ALJ in this case had a duty to fully and fairly develop the record, she was not required to act as Claimant's counsel. *Clark v. Shalala,* 28 F.3d 828 (8th Cir. 1994).  The ALJ had the right to assume that Claimant's counsel was presenting Claimant's strongest case for benefits.  *Nichols v. Astrue,* 2009 WL 2512417 *4 (7th Cir. 2009), citing *Glenn v. Sec'y of Health and Human Servs.,* 814 F.2d 387,391 (7th Cir. 1987).  Moreover, the ALJ's duty to develop the record did not mandate that she make exhaustive inquiries into Claimant's pain and symptoms, nor search for evidence that was cumulative in nature.  The ALJ's only duty in this regard was to insure that the record contained sufficient evidence upon which she could make an informed decision.   *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *See also, Weise v. Astrue,* 2009 WL 3248086 (S.D.W.Va.).  When considering the adequacy of the record to support a reasoned administrative decision, the Court must look for evidentiary gaps that result in "unfairness or clear prejudice" to the claimant.  *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).  Only under these circumstances should the Court remand a case for the failure of an ALJ to fully develop the record.  *Id.*

Moreover, it is Claimant's ultimate responsibility to prove that she is disabled; she bears the burden of supplying medical evidence to the Commissioner which establishes the severity of her impairments.  20 C.F.R. §§

404.1512(a) and 416.912(a). *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

In this case, Claimant's treatment records contain ample evidence of Claimant's alleged pain, numbness, and depression, documenting her reported symptoms, complaints, and treatment. Likewise, Claimant's pain, numbness, and depression were considered in the State agency physical and mental assessments. In addition to this evidence, the ALJ thoroughly questioned Claimant about her alleged pain, numbness, and depression during the administrative hearing. For instance, the ALJ prompted a dialogue with Claimant regarding her complaints of numbness in her right leg, inquiring, *inter alia*, what medications she was taking, if the medication was helping to alleviate her symptoms, was she seeing a doctor, what treatment was suggested, was physical therapy helpful, and why was she not taking prescription medication? (Tr. at 34-35). The ALJ then engaged in a dialogue with Claimant  focusing specifically on her pain, asking her to describe the pain she was experiencing on a daily basis; where the pain was located; how frequently she felt pain; whether her over-the-counter pain medication was helpful; whether she tried to seek help for individuals without medical insurance or financial means; what other measures she utilized to alleviate the pain; whether the other measures, such as laying down, using a heating pad, or using "Vick's," helped ease her pain; how long she could stand before her pain became

really bad; and what other activities aggravated her pain. (Tr. at 35-38). The ALJ also questioned Claimant about her reported depression, asking when her symptoms began, what type of treatment she received, what symptoms she experienced, whether it affected her ability to sleep, which hobbies or activities she no longer participated, and whether she socialized with others. (Tr. at 45-47).

The Court finds, therefore, that there is no merit to Claimant's contention that the ALJ failed to fulfill her duty to develop the record.

### D.     **Presumption of Disability**

Claimant's final contention is that the ALJ did not carry her burden to produce evidence sufficient to rebut the "presumption of disability." (Pl.'s Br. at 11-12). The Court finds this contention to be equally without merit.  Claimant is ultimately responsible for proving that she is disabled, and this responsibility never shifts to the Commissioner, but remains with Claimant.  As such, she bore the burden of providing medical evidence to the Commissioner that established the severity of her impairments. 20 C.F.R. §§ 404.1512(a) and 416.912(a). *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  While the Commissioner had a duty to go forward with the evidence at the fourth step of the evaluation, Claimant retained "the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

At the fourth step of the sequential disability evaluation, the SSA recognizes that when a claimant proves the existence of severe impairments,

which prevent the performance of past relevant work, the claimant has established a *prima facie* case of disability. The burden of production then shifts to the Commissioner to provide evidence demonstrating that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§404.1520(g); *See also*, *McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

In order to carry this burden, the Commissioner may rely upon medical-vocational guidelines listed in Appendix 2 of Subpart P of Part 404 ("grids"), "which take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." *Grant v. Schweiker*, 699 F.2d 189, 191-192 (4th Cir. 1983); See also 20 C.F.R. § 404.1569. However, the grids consider only the "exertional" component of a claimant's disability in determining whether jobs exist in the national economy that the claimant can perform. *Id.* For that reason, when a claimant has significant nonexertional impairments or has a combination of exertional and nonexertional impairments, the grids merely provide a framework to the ALJ, who must give "full individualized consideration" to the relevant facts of the claim in order to establish the existence of available jobs. *Id.* In those cases, the ALJ must prove

the availability of jobs through the testimony of a vocational expert. *Id.* As a corollary to this requirement, however, the ALJ has the right to rely upon the testimony of a vocational expert as to the availability of jobs types in the national economy that can be performed by the claimant so long as the vocational expert's opinion is based upon proper hypothetical questions that fairly set out all of the claimant's severe impairments. *See Walker v. Bowen,* 889 F.2d 47 (4th Cir. 1989).

In the present case, the ALJ recognized that Claimant's impairments resulted in a combination of exertional and nonexertional impairments. Therefore, she properly relied upon the testimony of a vocational expert in determining that jobs existed in significant numbers in the national economy that Claimant could perform.   (Tr. at 50-52).   Claimant does not argue that the vocational expert was not qualified to render opinions, or that the expert's opinions were based upon incomplete or inaccurate hypothetical questions. Indeed, the vocational expert was present throughout the administrative hearing and had the opportunity to listen to Claimant's descriptions of her medical conditions and their resulting functional limitations.   Despite the totality of Claimant's restrictions, the vocational expert found medium and sedentary exertional level positions that Claimant could perform. (Tr. at 50-51). In view of these circumstances, the Court finds that the ALJ fulfilled her obligation to produce expert testimony on the subject of job availability individualized to the Claimant.  Consequently, the decision of the Commissioner that Claimant was not under a disability is supported by substantial evidence.

## VIII.  **Conclusion**

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Therefore, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

**ENTERED:**  August 19, 2011.

Cheryl A.  Eifert
United States Magistrate Judge

30